```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

        Plaintiff,
                                            MEMORANDUM & ORDER
           -against-
                                            18-CR-00002(KAM)
JAMES JOSEPH,

        Defendant.
----------------------------------X
```
**MATSUMOTO, United States District Judge:**

       The government moves, *in limine*, to admit statements by an alleged statutory rape victim ("Victim") who has indicated that she will be unavailable to testify at the defendant's revocation of supervised release hearing, scheduled for February 11, 2020. Specifically, the government seeks to introduce statements of the Victim regarding the defendant's identity and an alleged sexual encounter with the defendant on November 8, 2017. Defendant opposes the admission of such evidence.

**BACKGROUND**

**I. Original Sentence**

       On August 24, 2015, James Joseph pled guilty before the Honorable Joel C. Hoppe, United States Magistrate Judge for the Western District of Virginia, to Access Device Fraud in violation of 18 U.S.C. 1029(c), a Class C felony. (ECF No. 3, Violation of Supervised Release Report ("First VOSR Report") 3.)

Joseph was sentenced to a twenty month custodial term and a three-year term of supervised release with the following special conditions:

> 1) The defendant shall provide the probation officer with access to any requested financial information; 2) The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer; 3) The defendant shall reside in a residence free of firearms, ammunition, destructive devices, and dangerous weapons; and 4) The defendant shall permit a warrantless search and seizure of person and property as directed by the probation officer, to determine whether the defendant is in possession of firearms or unapproved financial access devices.

(*Id.* 4.) Defendant's supervised release also included the condition that he "shall not commit another federal, state or local crime." (*Id.* 5-6.) On October 18, 2017, a transfer of jurisdiction request was forwarded to the Western District of Virginia. On December 22, 2017, the Honorable Michael F. Urbanski, U.S. District Judge for the Western District of Virginia signed a transfer of jurisdiction request to the Eastern District of New York and the case was assigned to the undersigned. (*Id.* 5.)

## II. New York State Criminal Case

On January 17, 2018, defendant was indicted by a state grand jury in Brooklyn, New York for three counts of Rape in the Third Degree, and two counts of Endangering the Welfare of a

2

Child ("State Case"). (ECF No. 33, Gov't Ltr. 2.) The indictment charged that on November 8, 2017, Mr. Joseph had sexual intercourse three times with the Victim, a 15-year old female at the time, and also provided her with marijuana.[1] On November 9, 2017, the Victim went to Brookdale Hospital and claimed to Emergency Department personnel that, while walking home, she had been forcibly raped. (ECF No. 45, Gov't Reply 1.) The Victim consented to an Emergency Department physician performing a sexual offense evidence collection kit on her. (*Id.*) Later the same day, the Victim was interviewed by Detective Aubrey Henry of the Special Victims Squad of the New York Police Department ("NYPD"). (*Id.*) In the course of her interview with Detective Henry, the Victim stated that she had not been forcibly raped, but rather had consensual sex with a male. (*Id.*) Later yet on November 9, the Victim identified the defendant in a photo array as the person with whom she had sex. (*Id.*)

After the defendant was arrested on January 8, 2018, the Victim identified him yet again from a lineup as the person with whom she had consensual sex on November 8, 2017. (*Id.*) Three days later, on January 11, the Victim gave sworn testimony

---

[1] The government's letter explains that the Victim's identity is known to defendant as a result of previously provided discovery, but has not been disclosed in case filings "for privacy reasons." (*Id.*)

3

to a New York State grand jury. (*Id.* 1-2.) The Victim testified that she and the defendant engaged in sexual intercourse three times on November 8, 2017. (*Id.* 2.) The Victim further explained that she initially told personnel at Brookdale Hospital that she had been raped in order to get medical treatment. As part of the grand jury proceeding, the Kings County District Attorney's Office ("DA") also offered the testimony of Office of the Chief Medical Examiner ("OCME") Criminalist, Jennifer Dorry, and Detective Henry. (Gov't Ltr. 2.)

Following the indictment, the DA made four separate productions to the defendant in the State Case, which included the following materials: (1) Grand Jury Minutes for the Victim, Detective Henry, and Ms. Dorry; (2) the Victim's complainant report and the NYPD's arrest report; (3) an audio recording and video of the January 8 lineup wherein the Victim identified the defendant; (4) the instructions and report for the lineup, as well as the photo array; (5) the Victim's prior statements, as captured in an NYPD officer's memo book and separate information report; and (6) the Victim's medical records and a laboratory examination report. (*Id.* 2-3.) The government informs the court, and the defendant does not dispute, that all State Case

4

discovery was reproduced to the defendant in this Violation of Supervised Release ("VOSR") proceeding.  (*Id.* 3.)

On May 22, 2019, the DA dismissed the State Case because the Victim was not cooperative.  (*Id.* 3.)

### III.  Violation of Supervised Release

On January 8, 2019, the government charged the defendant for violations of mandatory conditions of supervision. The First VOSR Report contains five charges, the first four of which pertain to the State Case, which Probation asserts violated the mandatory condition of supervision that "[t]he defendant shall not commit another federal, state or local crime." (*Id.* 5-6.)  As pertains here, Charges One through Four of the First VOSR Report are:

- **Charge One**: Rape 3rd Degree: Victim Less than 17 Years Old/Perpetrator 21 Years or More, a Class E Felony;

- **Charge Two**: Forcible Touching-Touch Sexual/Intimate Parts of Another, a Class A Misdemeanor;

- **Charge Three**: Acting in a Manner to Injure a Child Less than 17, a Class A Misdemeanor;

- **Charge Four**: Sexual Abuse-3rd Degree: Subjecting Another Person to Sexual Contact Without Consent, a Class B Misdemeanor.

5

(*Id.*)  The government subsequently charged defendant with additional violations of supervised release, none of which are relevant to the disposition of the instant motion.[2]

**IV.  The Victim's Unavailability**

The government represents that it served a subpoena on the Victim calling for her presence at the February 11, 2019 revocation hearing, but the government suspects the Victim may refuse to testify notwithstanding the subpoena.  (Gov't Reply 3.)  The government's concern is based on the Victim's history of noncooperation with prosecutors.  The Victim's refusal to cooperate with the DA resulted in dismissal of state charges against the defendant.  (*Id.*)  Throughout the fall of 2019, the government apparently made "numerous attempts" to contact the Victim, by leaving phone messages at her residence and associated telephone numbers.  The Victim did not return any of the government's messages.  (*Id.*)  In January 2020, the government made additional efforts to contact the Victim, and

---

[2]    Charge Five of the First VOSR Report charges that defendant tested positive for marijuana use, in violation of the mandatory condition that he "not unlawfully possess a controlled substance."  (*Id.* 7.)  On September 18, 2019, the government filed a supplement to the First Report, adding three additional VOSR charges (Charges Six through Eight) for failing to submit to drug testing on three occasions.  (ECF No. 31, Violation of Supervised Release: Supplemental Report ("Second VOSR Report").)  On December 3, 2019, the government added nine charges (Charges Nine through Seventeen) for violations relating to the special condition for drug testing and treatment, and reporting to the probation officer, resulting in a total of seventeen VOSR charges.  (ECF No. 38, Violation of Supervised Release: Supplemental Report ("Third VOSR Report").)

6

spoke to a person at the Victim's residence.  (*Id.*)  Though this person is not identified in the government's filings, he or she informed the government that the Victim was aware of the proceeding and refuses to testify.  (*Id.*)  The government further states that it is in possession of information concerning the Victim's location, and can provide this information to the court on an *ex parte* basis.  (*Id.*)

**V.   The Motion**

The government intends to "rely on certain hearsay statements of the Victim" in defendant's upcoming VOSR hearing. (Gov't Ltr. 4, 6-8.)  Defendant opposes the government's motion to admit the Victim's out-of-court statements.  Defendant seeks to preclude the Victim's statements because they are not admissible under an exception to the hearsay rule, and admitting the statements will unjustifiably deny defendant the opportunity to confront his accuser.  (ECF No. 43, Defendant's Opposition to Motion *in Limine* ("Def.'s Opp.") 1.)  Defendant first asserts that the government has failed to show that the declarant is unavailable, and questions how diligent the government has actually been in procuring the Victim's attendance at the VOSR hearing.  (*Id.* 2.)

Second, the defendant asserts that the Victim's hearsay statements are unreliable because she provided

"materially different accounts of what allegedly transpired between her and Mr. Joseph." (*Id.*) Defendant's motion highlights the Victim's conflicting accounts of her November 8, 2017 encounter with defendant: the Victim initially stated to hospital personnel that defendant grabbed and forced her onto the floor of an apartment, removed her clothes, and raped her; then, later that same day, the Victim told Detective Henry that she met defendant near a gas station and accompanied him to his apartment where they "willingly" had sexual intercourse in his bedroom, fell asleep, and then watched television together before going to a McDonalds restaurant. (*Id.*) The "twists and turns" in the Victim's testimony, defendant insists, warrant exclusion. (*Id.* 3.) Relatedly, defendant rejects the government's contention that the Victim's testimony is corroborated by independent and reliable evidence. (*Id.*)

**DISCUSSION**

I.  Revocation Proceedings

"It is well-settled that revocation hearings are not the same as criminal trials and judicial officers have considerable discretion at such hearings in determining the testimony to admit and the manner in which it may be given." *United States v. Santos-Ferrer*, 111 F. App'x 51, 52 (2d Cir. 2004) (summary order). The full range of procedural safeguards

8

associated with a criminal trial do not attach to supervised release proceedings because "a [supervisee] already stands convicted of a crime." *Id.* (quoting *United States v. Jones*, 299 F.3d 103, 109 (2d Cir. 2002)).  Moreover, the Federal Rules of Evidence do not apply to supervised release revocation hearings. *See* Fed. R. Evid. 1101(d)(3) (federal rules of evidence not applicable to proceedings "granting or revoking . . . supervised release"); Fed. R. Crim. P. 32.1(a)(2) advisory committee's notes (2003 ed.) ("The hearing required by Rule 32.1(a)(2) is not a formal trial; the usual rules of evidence need not be applied.").

Because revocation proceedings are not deemed part of a criminal prosecution, neither the Confrontation Clause nor the Federal Rules of Evidence strictly apply to out-of-court statements.  *United States v. Harris*, 838 F.3d 98, 107 (2d Cir. 2016) (citing *United States v. Carthen*, 681 F.3d 94, 99-100 (2d Cir. 2012)).  Although the Confrontation Clause of the Sixth Amendment does not apply to supervised-release revocation hearings, *see United States v. Aspinall,* 389 F.3d 332, 342-43 (2d Cir. 2004) (discussing *Crawford v. Washington,* 541 U.S. 36 (2004)), the Federal Rules of Criminal Procedure provide that in such a hearing the judge must give the defendant "an opportunity to question any adverse witness, unless the judge determines that the interest of justice does not require the witness to

9

appear." Fed. R. Crim. P. 32.1(b)(2)(c). The Second Circuit has explained that the "good cause" determination "requires the court to balance the defendant's interest in confronting the declarant against the government's reasons for not producing the [declarant] and the reliability of the proffered hearsay." *Carthen*, 681 F.3d at 100 (alterations and internal quotation marks omitted).

The government tacitly concedes that the Victim's statements that it intends to proffer at the defendant's VOSR hearing are hearsay with no applicable exception for admissibility. (Gov't Ltr. 6-7.)[3] Accordingly, the court must determine whether "good cause" exists to admit the Victim's hearsay statements at defendant's revocation hearing.

## II. Unavailability

The government does not expect the Victim to be available at defendant's revocation hearing based on her prior and ongoing refusal to cooperate. (Gov't Ltr. 7.) In his

---

[3] The government does not address the applicability of Federal Rule of Evidence 803(4), an established exception to the hearsay rule for "[a] statement that . . . is made for—and is reasonably pertinent to—medical diagnosis or treatment; and describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). It appears the Victim told Emergency Department personnel at Brookdale Hospital that she was raped in order to receive medical treatment, specifically testing for sexually transmitted diseases (STDs). Because the government has not invoked Rule 803(4), however, and defendant has obviously not had occasion to challenge the Rule's applicability, the court will not give the matter further consideration.

opposition, the defendant argued that "aside from leaving phone messages, no other efforts ha[d] been made to secure the declarant's testimony at the hearing." (Def.'s Opp. 2.) However, defendant's contention was made before the government replied on February 3 by further elaborating its efforts to secure the Victim's appearance at the hearing, including serving the Victim with a subpoena to command her presence at the VOSR hearing, and speaking to a person at the Victim's residence who informed the government that the Victim knew of defendant's proceeding and would not testify. (Gov't Reply 3.)[4] The government's efforts to obtain the Victim's appearance coupled with the Victim's prior refusal to cooperate with the DA, which precipitated the dismissal of the State Case against defendant, lead the court to infer that the Victim is, for all intents and purposes, unavailable to testify. This inference may be bolstered further at the revocation hearing based on the government's *ex parte* submissions with respect to the Victim's location, which will supposedly substantiate why contacting the Victim is so difficult. (Gov't Ltr. 7 n.2.)

The government cites to a line of Second Circuit authorities to support its proposition that the "Victim's

---

[4] The government is ordered to produce at the VOSR hearing the subpoena served on the Victim (with the address redacted) and to make the proposed *ex parte* showing to the court regarding the Victim's location.

failure to cooperate with prosecutors and stated refusal to testify are satisfactory reasons not to produce the Victim." (Gov't Reply 5.)[5] Each of the cited cases involved some element of fear or intimidation that caused the declarant's reluctance to testify, a factor that the government has not asserted as animating the Victim's refusal to testify here. However, even the more stringent Federal Rules of Evidence recognize a declarant to be unavailable where she "refuses to testify about the subject matter despite a court order to do so." Fed. R. Evid. 804(a)(2). In a revocation proceeding, which lacks the full range of procedural safeguards characteristic of a typical criminal proceeding, the Victim's past and ongoing refusal to cooperate despite the government's efforts to secure her attendance at defendant's upcoming hearing, suffice to establish her unavailability for the revocation hearing.

### III. Reliability

Defendant contends the Victim's testimony is unreliable because she initially claimed that the defendant

---

[5] *See United States v. Jackson*, 347 F. App'x 701, 703; *see also United States v. McCourty*, 2019 WL 4732380 (2d Cir. Sept. 27, 2019) (allowing hearsay statements from a victim of domestic violence after the government demonstrated that it had made several attempts to contact the victim and she "ultimately refused to cooperate"); *United States v. Lloyd*, 769 F. App'x 17, 21 (2d Cir. 2019) (allowing hearsay statements after the government "advised the court that the declarant had been unwilling to cooperate"); *Carthen*, 681 F.3d at 100 (allowing hearsay statements after declarant repeatedly refused to testify).

forcibly raped her, only to change her story the same day when she told Detective Henry that she willingly had intercourse with the defendant. Defendant urges the court to exclude the Victim's testimony based on these "materially different accounts . . . .". (Def.'s Opp. 2.)

Charges Two through Four of the First VOSR Report charge defendant with committing Forcible Touching, Acting in a Manner to Injure a Child Less Than 17, and Sexual Abuse in the Third Degree. These offenses require the following proof:

- <u>Forcible Touching</u>: the government must show the defendant "forcibly touch[ed] the sexual or other intimate parts of another person . . . for the purpose of gratifying the actor's sexual desire." N.Y.P.L. § 130.52.

- <u>Acting in a Manner to Injure a Child Less Than 17</u>: the government must show the defendant "knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old." N.Y.P.L. § 260.10.

- <u>Sexual Abuse in the Third Degree</u>: the government must show the defendant "subject[ed] another person to sexual contact without the latter`s consent." N.Y.P.L. § 130.55.

There is no dispute that the Victim was 15 years old at the time of the alleged November 8, 2017 encounter with defendant. Under New York law, the Victim was legally incapable of consenting to sexual intercourse with the defendant, a 27-year-old man, on the date of the alleged encounter. *See* N.Y.P.L. § 130.05(3)(a) (a person less than 17 years old is incapable of consent).

13

Though the Victim stated to hospital personnel on November 9, 2017 that she had been forcibly raped, her subsequent statements that she had willingly engaged in intercourse with the defendant were not *materially* different from her original statement because, at bottom, each statement identified defendant as the person with whom she had intercourse. After her initial statement to hospital personnel, the Victim stated to Detective Henry that she willingly engaged in intercourse with a man, and then identified that man as defendant from a photo array. (Gov't Reply 1.) Two months later, on January 8, 2018, the Victim identified the defendant from a lineup as the person with whom she had sexual relations. (*Id.*) The Victim gave a consistent account to the grand jury on January 11, 2018, when she provided sworn testimony that she engaged in sexual intercourse with defendant. (*Id.* 2.) Thus, in every statement regarding her November 8, 2017 encounter with defendant, the Victim has consistently maintained that she had sexual intercourse with him. If credited, the Victim's testimony would suffice to find defendant guilty of violating his supervised released conditions because the Victim was incapable of legally consenting to sexual intercourse with a 27-year old man at the time. Aside from the Victim's initial statement to the hospital, which the Victim testified was motivated by a desire to procure medical treatment and testing

for STDs, (see Gov't Reply 2, Def.'s Opp. 2), defendant has not provided the court with additional reasons to doubt the reliability of the Victim's out-of-court statements identifying the defendant as the person with whom she had sexual intercourse.

The court agrees with the government that concerns about the Victim's reliability may be assuaged by independent and reliable evidence. Specifically, the government intends to admit the following into evidence: "the Victim's medical records, documenting not only her age but also her treatment, including the performance of a rape kit, at Brookdale Hospital on November 9, 2017, [and] the OCME's records documenting the DNA testing done in this case, which revealed that semen found on the Victim's underwear contained DNA matching that of the defendant." (Gov't Ltr. 7.) Defendant's attacks on the corroborating value of the additional proposed evidence are unpersuasive. Defendant asserts Charges Two through Four are not independently verifiable. But at least Charge Four, which requires the government to prove that the defendant subjected the Victim to sexual contact without her consent, N.Y.P.L. § 130.55, may be independently verified based on testimony and records from the Victim's treating physician and OCME records that, according to the government, reveal semen on the Victim's underwear which contained DNA matching the defendant's. (Gov't

Ltr. 5.) Defendant also avers that the Victim's testimony is the only evidence available to prove defendant's *mens rea*, (*see* Def.'s Opp. 3), but, as noted above, defendant's *mens rea* is irrelevant to charges premised on the Victim's incapacity to consent.

## CONCLUSION

The court has balanced the government's reasons for not producing the Victim, and the reliability of her hearsay statements, against the defendant's interest in confronting the Victim. For the reasons stated above, the court finds "good cause," based on the Victim's lack of availability, to admit the Victim's out-of-court statements, which have been consistent with respect to the defendant's identity and the allegation that they had intercourse on November 8, 2017, and purportedly will also be corroborated by independent and reliable evidence at defendant's revocation hearing. Accordingly, the government's motion *in limine* to admit the Victim's hearsay testimony is GRANTED.

**SO ORDERED.**

Dated: February 4, 2020
       Brooklyn, New York

/s/
**Kiyo A. Matsumoto**
United States District Judge